

SHAWN N. ANDERSON
United States Attorney
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7215

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 22-00004 |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES' TRIAL BRIEF** |
| TIMOTHY JEROME CONCEPCION, | Trial: June 30, 2022 – 10:00 A.M.<br>Judge: John C. Coughenour<br>United States Senior District<br>Judge, Western District of<br>Washington |
| Defendant. | |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1
II. CASE POSTURE .................................................................................................. 1
III. PRETRIAL MOTIONS ......................................................................................... 1
IV. FACTS THE GOVERNMENT INTENDS TO PROVE AT TRIAL ................... 1
V. CHARGES AND RELATED ISSUES ................................................................. 4
    A. Conspiracy to Distribute Fifty or More Grams of Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2 ............................................. 5
    B. Drug User in Possession of Firearms and Ammunition, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2) ...................................................................................... 5
    C. Using and Carrying a Firearm During a Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 ............................................................................ 6
VI. ANTICIPATED EVIDENCE ................................................................................ 6
    A. Eugenis Pewtress, GPD ............................................................................... 7
    B. Yvonne Cruz, HSI ....................................................................................... 7
    C. Christopher Dangan, HSI ............................................................................ 7
    D. Edgar Tiamzon, ATF .................................................................................. 7
    E. Jensen Cayas, DEA ..................................................................................... 7
VII. EVIDENTIARY AND OTHER TRIAL ISSUES ................................................. 7
    A. Statements ................................................................................................... 7
    B. Photographs ................................................................................................ 8
    C. Duplicates ................................................................................................... 8
    D. Chain of Custody ........................................................................................ 9
    E. Prima Facie Threshold for Authentication ............................................... 10
    F. Foundation for Still Photographs/Video Recordings ............................... 12
    G. Statements of Non-Testifying Agents ...................................................... 12
    H. Witness Impeachment ............................................................................... 13
    I. Unrelated Instances of Non-Criminal Conduct ........................................ 14
    J. Explanation of Investigation .................................................................... 14
    K. Inextricably Intertwined Evidence ........................................................... 14
    L. Stipulations .............................................................................................. 15
VIII. CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Crawford v. Washington*, 541 U.S. 36 (2004) .................................................................... 13

*Gallego v. United States*, 276 F.2d 914 (9th Cir. 1960) .................................................. 9, 10

*People of the Territory of Guam v. Ojeda*, 758 F.2d 403 (9th Cir. 1985) ........................... 8

*Phiropoulous v. State*, 908 S.W. 3d 712 (Mo. App. E.D. 1995) ........................................ 12

*Rogers v. Ingersoll-Rand Co.*, 971 F.Supp. 4 (D.D.C. 1997) ............................................ 12

*Simms v. Dixon*, 291 A.2d 184 (D.C. App. 1972) .............................................................. 12

*State v. Powers*, 148 S.W. 3d 830 (Mo. App. E.D. 1995) ................................................. 12

*Suthterland v. Koster*, No. 4:10CV1611MLM,
 2011 WL 2784108 (E.D. Mo. Jul. 15, 2011) ................................................................ 12

*United States v. Barela*, 973 F.2d 852 (10th Cir. 1992) ................................................... 14

*United States v. Barry*, 814 F.2d 1400 (9th Cir. 1987) ..................................................... 14

*United States v. Beckman*, 298 F.3d 788 (9th Cir. 2002) .................................................. 14

*United States v. Black*, 767 F.2d 1334 (9th Cir. 1985) ..................................................... 10

*United States v. Brannon*, 616 F.2d 413 (9th Cir. 1980);
 cert. denied sub nom. *Cox v. United States*, 447 U.S. 908 (1980) ................................. 8

*United States v. Chang An-Lo*, 851 F.2d 547 (2d Cir. 1988) .............................................. 8

*United States v. Clark*, 986 F.2d 65 (4th Cir. 1993) ......................................................... 12

*United States v. Collins*, 90 F.3d 1420 (9th Cir. 1996) ..................................................... 15

*United States v. Cromer*, 389 F.3d 662 (6th Cir. 2004) ................................................... 14

*United States v. Davis*, 183 F.3d 231 (3d Cir. 1999) ........................................................ 13

*United States v. Garmany*, 762 F.2d 929 (11th Cir. 1985) ................................................. 8

*United States v. Georgalis*, 631 F.2d 1199 (5th Cir. 1980) ................................................ 8

*United States v. Geston*, 299 F.3d 1130 (9th Cir. 2002) ................................................... 13

*United States v. Gil*, 58 F.3d 1414 (9th Cir. 1995) ........................................................... 12

*United States v. Grimm*, 568 F.2d 1136 (5th Cir. 1978) ................................................... 14

*United States v. Harrington*, 923 F.2d 1371 (9th Cir. 1991) .............................................. 9

*United States v. Hedgcorth*, 873 F.2d 1307 (9th Cir. 1989) ............................................. 14

*United States v. Houston*, 547 F.2d 104 (9th Cir. 1976) .................................................. 15

*United States v. Love*, 767 F.2d 1052 (4th Cir. 1985) ...................................................... 14

*United States v. Marin*, 669 F.2d 73 (2nd Cir. 1982) .................................................................. 8

*United States v. Martin*, 897 F.2d 1368 (6th Cir. 1990) ............................................................ 14

*United States v. Matta-Ballesteros*, 71 F.3d 754 (9th Cir. 1995) ............................................. 10

*United States v. Qaoud*, 777 F.2d 1105 (6th Cir. 1985) ........................................................... 14

*United States v. Roach*, 28 F.3d 729 (8th Cir. 1994) ............................................................... 12

*United States v. Russell*, 703 F.2d 1243 (11th Cir. 1983) ........................................................ 14

*United States v. Solorio*, 669 F.3d 943 (9th Cir. 2012) ....................................................... 9, 13

*United States v. Standish*, 3 F.3d 1207 (8th Cir. 1993) ........................................................... 12

*United States v. Stewart*, 420 F.3d 1007 (9th Cir. 2005) ........................................................... 8

*United States v. Tenerelli*, 614 F.3d 764 (8th Cir. 2010) ......................................................... 14

**Statutes**

18 U.S.C. § 2 .................................................................................................................... 1, 4, 5, 6

18 U.S.C. § 922 ..................................................................................................................... 1, 4, 5

18 U.S.C. § 924 .................................................................................................................... 1, 4, 5, 6

21 U.S.C. § 841 ..................................................................................................................... 1, 4, 5

21 U.S.C. § 846 ..................................................................................................................... 1, 4, 5

**Rules**

Fed. R. Evid. 404 ............................................................................................................. 1, 13, 14

Fed. R. Evid. 405 ...................................................................................................................... 14

Fed. R. Evid. 608 ...................................................................................................................... 13

Fed. R. Evid. 801 ..................................................................................................................... 7, 8

Fed. R. Evid. 803 ...................................................................................................................... 12

Fed. R. Evid. 901 ................................................................................................................... 9, 10

Fed. R. Evid. 902 .............................................................................................................. 1, 10, 11

Fed. R. Evid. 1003 ...................................................................................................................... 8

**Other Authorities**

Manual of Crim. Jury Instructions for the Ninth Circuit § 12.1 (2022 ed. Updated 3/2022.) ......... 5

Manual of Crim. Jury Instructions for the Ninth Circuit § 14.22 (2022 ed. Updated 3/2022.) ....... 6

## I. INTRODUCTION

The Government submits this brief in compliance with the Court's Scheduling Order entered on April 26, 2022. *See* ECF No. 15. This case is set for jury trial on June 30, 2022. *Id.* The Government's trial brief sets forth the basic facts the Government intends to prove at trial, and anticipated legal and evidentiary issues that may arise at trial.

## II. CASE POSTURE

The grand jury returned a True Bill on April 13, 2022, charging defendant TIMOTHY JEROME CONCEPCION ("Defendant") with the offenses of Conspiracy to Distribute Fifty or More Grams of Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2; Drug User in Possession of Firearms and Ammunition, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2); and Using and Carrying a Firearm During a Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and § 2. ECF No. 9.

## III. PRETRIAL MOTIONS

As of this date, no pretrial motions have been filed by defense. The Government has filed the following: United States' Notice of Intent to Move for Admission of the Federal Rules of Evidence 404(b) Acts. ECF No. 25; and United States' Notice of Intent to Move to Admit Self-Authenticating Evidence Pursuant to Federal Rules of Evidence 902(14). ECF No. 26.

## IV. FACTS THE GOVERNMENT INTENDS TO PROVE AT TRIAL

On April 4, 2022, Defendant was flagged down on Route 1 by Asan for speeding 61 mph in a 35 mph posted zone during a Guam Police Department ("GPD") Laser Traffic Enforcement. During the encounter, GPD Officer Eugenis Pewtress observed Defendant's nervous behavior and noted a strong odor of marijuana emitting from the interior of the vehicle. Defendant had two passengers. One was his girlfriend, I.C. The other was his brother, a 13-year-old minor, T.Q., a student at Oceanview Middle School.

Officer Pewtress asked Defendant to step out of the car. The Officer then saw a firearm, a Rossi revolver, on the driver door panel. The Officer asked Defendant about the firearm - Defendant stated that it was a "pellet" gun. Defendant asked Officer Pewtress "Come on, can you give me a break?" When asked if there was anything of concern in the Nissan, Defendant consented to search the vehicle stating "Yeah, go ahead." Defendant continued to plead to be given a break. Officer Pewtress checked the Rossi revolver, which is a firearm. Officer Pewtress searched the vehicle and discovered another firearm, a Colt Rossi, found between the passenger seat and the center console.

Officer Pewtress searched the vehicle and located fourteen (14) clear baggies containing 422 gross grams of a white crystallized substance, suspected to be methamphetamine in a Louie Vuitton pouch on the front passenger floor. Officer Pewtress also found drug paraphernalia (blue glass pipe, electronic scale, empty clear baggies and a spoon) in the vehicle. Officer Pewtress also found sixty-two (62) rounds of ammunition, as well as military bulletproof vests.

Defendant informed Officer Pewtress that the drugs in the pouch belonged to him - he claimed no knowledge about the firearms found inside the car. Officer Pewtress seized $1,900 in currency from the Defendant's front pocket, and another $665 in currency from a pouch within the vehicle.

Defendant's passenger I.C. was interviewed by Homeland Security Investigations ("HSI") Task Force Officer ("TFO") Yvonne Cruz. She informed the Officer that she and the Defendant started dating, and that they had been staying at the Dusit Thani Guam Resort in Tumon for the past week. I.C. stated the drugs and the firearms found in the vehicle belonged to the Defendant. I.C. stated during their stay at the Dusit Thani Guam Resort, she and the Defendant smoked methamphetamine with "friends" and others who came over to visit. I.C. stated that she knows the two firearms found in the vehicle belonged to Defendant because she had seen him with both

2

firearms during their stay at the Dusit Thani Guam Resort. I.C. stated while they smoked methamphetamine, the Defendant kept the firearms on a table, or it was on his person, but the firearm was always around him.

I.C. informed law enforcement that on at least two occasions, she saw Defendant engage in drug transactions selling methamphetamine in the hotel room. The transactions occurred between the Defendant and unknown persons who visited. I.C. stated that another individual, namely A.G. was also present during these transactions and drug activities in the hotel room. She stated their current room #1907 is registered to A.G. I.C. stated while she may not have seen money exchange from the transactions, she knows the money she has seen in the room was from the sale of methamphetamine. She stated she has seen at least $5,000 in currency on Defendant. I.C. stated Defendant needed to get another hotel room because their current room #1907 had too many people visiting or coming and going, and they wanted privacy. I.C. stated Defendant had another "friend" identified as Jacob Kadi Manibusan reserve a room on April 4, 2022, since they didn't have any identification. I.C. stated that the second room was #1016 which she and Defendant used to store some of their belongings to include drug paraphernalia. I.C. stated prior to them leaving room #1016, they smoked methamphetamine and she recalls leaving baggies and a pipe in the room.

HSI TFO Christopher Dangan interviewed A.G. A.G. stated he has known Defendant for about three years. A.G. stated he has been assisting Defendant with the sale of methamphetamine since June of 2021. A.G. explained that he would receive money from customers and provide the customers with methamphetamine which he received from Defendant. A.G. stated that he rented a room on March 27, 2022, for the Defendant who did not have any identification and he (A.G.) used a debit card to secure the room at the Dusit Thani Guam Resort #1907. A.G. also has been extending their stay on a day-to-day basis. A.G. stated that he has seen at least three drug

3

transactions occur per day in the hotel room. A.G. stated that he would escort the customers from the lobby to the room and the customers handed him money and he would hand them the methamphetamine in baggies. A.G. stated that Defendant has two firearms – a revolver and a .45 caliber, that Defendant keeps the firearms on his person and in the hotel room during their stay. A.G. stated that Defendant has made statements that the firearms were for his "protection." A.G. understood Defendant was suggesting that in the event someone may try to rob him (Defendant) during a drug transaction he will use the firearm as protection. A.G. also stated that the Defendant's younger sibling T.Q. has been staying at the Dusit Thani Guam Resort. TFO Dangan conducted searches of the two hotel rooms at the Dusit Thani Guam Resort and recovered paraphernalia, U.S. currency, the Defendant's high school graduation diploma, a scale, a micro sd card in a black hard shell plastic container. A.G. provided a written statement to police.

Bureau of Alcohol, Tobacco, Firearms and Explosives TFO Edgar Tiamzon seized the Rossi .357 revolver, the Colt pistol, and the ammunition. The firearms and ammunition were determined to be firearms that traveled in interstate commerce to get to Guam.

The methamphetamine was subject to analysis at the Drug Enforcement Administration ("DEA") Southwest Laboratory. Jensen D. Cayas, Senior Forensic Examiner determined that the methamphetamine weighed 390.8 grams of methamphetamine with a purity level of 64%.

## V. CHARGES AND RELATED ISSUES

Defendant is charged with the following: Conspiracy to Distribute Fifty or More Grams of Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2; Drug User in Possession of Firearms and Ammunition, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2); and Using and Carrying a Firearm During a Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and § 2. ECF No. 9.

//

4

Case 1:22-cr-00004 Document 27 Filed 06/06/22 Page 8 of 19

A. **Conspiracy to Distribute Fifty or More Grams of Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2**

Conspiracy to Distribute Fifty or More Grams of Methamphetamine, is a violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2. The elements of the offense are:

First:     First, beginning on or about March 29, 2022, and ending on or about April 4, 2022, there was an agreement between two or more persons to distribute methamphetamine; and

Second:     Second, the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

Source: Manual of Crim. Jury Instructions for the Ninth Circuit § 12.5 (2022 ed. Updated 3/2022.)

B. **Drug User in Possession of Firearms and Ammunition, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2)**

Drug User in Possession of Firearms and Ammunition, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). The elements of the offense are:

First:     First, the defendant knowingly possessed one Colt pistol, .380 caliber, obliterated Serial Number and one Rossi revolver, .357 Caliber, Serial Number F413431 and 62 rounds of ammunition;

Second:     Second, the Colt pistol, .380 caliber, obliterated Serial Number and one Rossi revolver, .357 Caliber, Serial Number F413431 and 62 rounds of ammunition had been shipped, transported, in interstate commerce.

Third:     Third, at the time the defendant possessed the Colt pistol, .380 caliber, obliterated Serial Number and one Rossi revolver, .357 Caliber, Serial Number F413431 and 62 rounds of ammunition, the defendant was an unlawful user of a controlled substance; and

Fourth:     Fourth, at the time the defendant possessed the Colt pistol, .380 caliber, obliterated Serial Number and one Rossi revolver, .357 Caliber, Serial Number F413431 and 62 rounds of ammunition, the defendant knew he was an unlawful user of a controlled substance.

Source: Manual of Crim. Jury Instructions for the Ninth Circuit § 14.15 (2022 ed. Updated 3/2022.)

### C. Using and Carrying a Firearm During a Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2

First: First, the defendant committed the crime of Conspiracy to Distribute More than Fifty Grams of Methamphetamine as charged in Count 1 of the indictment, which I instruct you is a drug trafficking crime; and

Second: Second, the defendant knowingly used and carried the Colt pistol, .380 caliber, obliterated Serial Number and one Rossi revolver, .357 Caliber, Serial Number F413431 and 62 rounds of ammunition during and in relation to that crime.

A defendant "used" a firearm if he actively employed the firearm during and in relation to the Conspiracy to Distribute Fifty or More Grams of Methamphetamine.

A defendant "carried" a firearm if he knowingly possessed it and held, moved, conveyed, or transported it in some manner on his person or in a vehicle.

A defendant "brandished" a firearm if he displayed all or part of the firearm, or otherwise made the presence of the firearm known to another person, to intimidate that person, regardless of whether the firearm was directly visible to that person.

A defendant used and carried a firearm "during and in relation to" the crime if the firearm facilitated or played a role in the crime.

Source: Manual of Crim. Jury Instructions for the Ninth Circuit § 14.22 (2022 ed. Updated 3/2022.)

## VI. ANTICIPATED EVIDENCE

What follows is a brief summary of the testimony of the witnesses the Government intends to call at trial. This list is not exhaustive.

//

6

A. **Eugenis Pewtress, GPD**

Eugenis Pewtress is a Police Officer with the GPD. Officer Pewtress conducted the pullover, observed the firearm in a door panel, conducted search of the vehicle, discovered the methamphetamine, and heard the Defendant's statements.

B. **Yvonne Cruz, HSI**

Yvonne Cruz is a TFO with the HSI. TFO Cruz interviewed Defendant's passenger I.C., heard the statements of the Defendant's co-conspirator, obtained I.C.'s consent to search her phone, and arranged for the extraction of conversations between the Defendant, I.C. and other co-conspirators from her phone. TFO Cruz obtained a written statement from I.C.

C. **Christopher Dangan, HSI**

Christopher Dangan is a TFO with the HSI. TFO Dangan interviewed co-conspirator A.G., obtained a written statement from A.G., and obtained consent to search his phone, and arranged for the extractions of conversations between the Defendant, I.C. and other co-conspirators from his phone.

D. **Edgar Tiamzon, ATF**

Edgar Tiamzon is a TFO for ATF. TFO Tiamzon seized the firearms and ammunition and arranged for the examination to determine if the firearms and ammunition traveled in interstate commerce.

E. **Jensen Cayas, DEA**

Jensen Cayas is a chemist with the DEA. Jensen Cayas conducted tests on the methamphetamine to obtain the weight and purity level of the drug.

VII. **EVIDENTIARY AND OTHER TRIAL ISSUES**

A. **Statements**

The Government will offer Defendant's statements into evidence at trial. Fed. R. Evid.

7

801(d)(2)(A). The Government may move to admit excerpts of the Defendant's text messages in evidence pursuant to Federal Rules of Evidence 801(d)(2)(A), as an Opposing Party's Statement. Pursuant to Rule 801(d)(2)(A) of the Federal Rules of Evidence, a defendant's out-of-court statement is not hearsay when offered by the Government. Fed. R. Evid. 801(d)(2)(A). A "statement is not hearsay" if it is offered against a party and is the party's own statement. *United States v. Marin*, 669 F.2d 73, 84 (2nd Cir. 1982). A defendant, however does not have a parallel ability to offer his/her own statements into evidence. "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *Id.*

### B. Photographs

The Government may offer photographs into evidence. Under Rule 901 of the Federal Rules of Evidence, a witness familiar with a scene or object may provide a sufficient foundation for admission of a photograph by testifying that it fairly and accurately depicts the scene or the object at the relevant time. *See United States v. Brannon*, 616 F.2d 413, 416-17 (9th Cir. 1980); *cert. denied sub nom. Cox v. United States*, 447 U.S. 908 (1980). *See also People of the Territory of Guam v. Ojeda*, 758 F.2d 403, 407-08 (9th Cir. 1985).

### C. Duplicates

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) the circumstances make it unfair to admit the duplicate instead of the original. *See* Fed. R. Evid. 1003. The party opposing admission on Rule 1003 grounds has the burden of producing evidence to trigger one of these exceptions. *See, e.g., United States v. Stewart*, 420 F.3d 1007, 1021 n.13 (9th Cir. 2005); *see also United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) (burden of challenging admissibility of duplicate rests with the party against whom it is offered); *United States v. Garmany*, 762 F.2d 929, 938 (11th Cir. 1985) (same); *United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir. 1980).

8

Case 1:22-cr-00004 Document 27 Filed 06/06/22 Page 12 of 19

### D. Chain of Custody

The Government's position is that the chain of custody in this case is sufficient to introduce the seized items into evidence. The Ninth Circuit has held that the prosecution may establish chain of custody to lay a proper foundation for admission of physical evidence if it is able to prove that a reasonable juror could find that the evidence is in substantially the same condition as when seized and if there is a reasonable probability the evidence has not been changed in important aspects. Merely raising the possibility of tampering is not enough to render evidence inadmissible. Finally, a defect in the chain of custody goes to the weight not admissibility. *United States v. Solorio*, 669 F.3d 943, 954 n.13 (9th Cir. 2012); *United States v. Harrington*, 923 F.2d 1371, 1373-1374 (9th Cir. 1991); *See generally* Fed. R. Evid. 901(a).

Before evidence is admitted, "[t]he prosecution must introduce sufficient proof so that a reasonable juror could find that the items [that the prosecution seeks to admit into evidence] are in 'substantially the same condition' as when they were seized." *Solorio*, 669 F.3d at 954 n.13 quoting *Harrington*, 923 F.2d at 1374. "The district court may admit the evidence if there is a 'reasonable probability the article has not been changed in important respects.'" *Solorio*, 669 F.3d at 954 n.13 (quoting *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960). "Before a physical object connected with the commission of a crime may properly be admitted in evidence there must be a showing that such object is in substantially the same condition as when the crime was committed. This determination is to be made by the trial judge. Factors to be considered in making this determination include the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it. If upon the consideration of such factors the trial judge is satisfied that in reasonable probability the article has not been changed in important respects, he may permit its introduction in evidence." *Gallego*, 276 F.2d at 917.

"[A] defect in the chain of custody goes to the weight, not the admissibility, of the evidence introduced." *United States v. Matta-Ballesteros*, 71 F.3d 754, 769 (9th Cir. 1995). "The possibility of a break in the chain of custody goes only to the weight of the evidence." *Harrington*, 923 F.2d at 1374.

"There is no rule requiring the prosecution to produce as witnesses all persons who were in a position to come into contact with the article sought to be introduced in evidence. *Gallego*, 276 F.2d at 917.

### E. Prima Facie Threshold for Authentication

When proffered evidence is challenged on grounds of authenticity or identity, the evidence should be admitted once the government makes a prima facie showing of authenticity. *See United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985) ("[Rule 901] requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. The credibility or probative force of the evidence offered is, ultimately, an issue for the jury.") (quotation marks and citation omitted).

In order to prove authenticity, there must be some evidence sufficient to support a finding that the evidence is what s/he proponent claims it to be. Fed. R. Evid. 901. Federal Rules of Evidence 902(14) states as follows:

> **Rule 902. Evidence That Is Self-Authenticating**
> The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:
>
> (14) **Certified Data Copied from an Electronic Device, Storage Medium, or File.** Data copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent also must meet the notice requirements of Rule 902(11).

The reference to the "certification requirements of Rule 902(11) or (12)" is a process by which a proponent seeking to introduce electronic data into evidence must present a certification

10

in the form of a written affidavit that would be sufficient to establish authenticity were that information provided by a witness at trial. Fed. R. Evid. 902(14). This affidavit, provided by a "qualified person," is U.S. Coast Guard Special Agent and Computer Forensics Agent Nicholas P. Wellein, who collected the evidence and can attest to the requisite process of digital identification utilized.

In applying the Federal Rules of Evidence 902(14), the accompanying Judicial Conference Advisory Committee notes provide guidance and insight concerning the intent of the law and how it should be applied. The second paragraph of Committee Notes on Rules – 2017 Amendment to Federal Rules of Evidence 902(14) states, in its entirety, as follows:

> Today, data copied from electronic devices, storage media, and electronic files are ordinarily authenticated by "hash value." A hash value is a number that is often represented as a sequence of characters and is produced by an algorithm based upon the digital contents of a drive, medium, or file. If the hash values for the original and copy are different, then the copy is not identical to the original. If the hash values for the original and copy are the same, it is highly improbable that the original and copy are not identical. Thus, identical hash values for the original and copy reliably attest to the fact that they are exact duplicates. This amendment allows self-authentication by a certification of a qualified person that she checked the hash value of the proffered item and that it was identical to the original. The rule is flexible enough to allow certifications through processes other than comparison of hash value, including by other reliable means of identification provided by future technology.

Committee Notes on Rules – 2017 Amendment ¶ 14.

The Advisory Committee notes further state that Rule 902(14) is designed to streamline the admission of electronic evidence where its foundation is not at issue, while providing a notice procedure where "the parties can determine in advance of trial whether a real challenge to authenticity will be made, and can then plan accordingly." Committee Notes on Rules – 2017 Amendment ¶ 13. This rule provides that properly certified electronic data is now afforded a strong presumption of authenticity, an opponent may still lodge an objection, but the opponent now has the burden to overcome that presumption.

11

F. **Foundation for Still Photographs/Video Recordings**

"Videotaped evidence is categorized as photographic evidence under Federal Rule of Evidence 1001(2). So long as the scenes or events depicted accurately represent what they are alleged to portray, there is no requirement that the individual who actually took the pictures testify at trial to lay a proper foundation." *Rogers v. Ingersoll-Rand Co.*, 971 F.Supp. 4, 14 (D.D.C. 1997) (citing *Simms v. Dixon*, 291 A.2d 184, 186 (D.C. App. 1972)). "The same principles that govern the foundation for still photographs apply to the admission of motion pictures or videotapes. *State v. Powers*, 148 S.W. 3d 830, 832 (Mo. App. E.D. 1995). 'The party offering a videotape in evidence must show that it is an accurate and faithful representation of what it purports to show.' *Phiropoulous v. State*, 908 S.W. 3d 712, 714 (Mo. App. E.D. 1995). 'The foundation may be established by any witness who is familiar with the subject matter of the tape and is competent to testify from personal observation. *Id.*" *Suthterland v. Koster*, No. 4:10CV1611MLM, 2011 WL 2784108, at *7 (E.D. Mo. Jul. 15, 2011).

"Under federal law, a foundational objection to the admission of a videotape is without merit where testimony indicates that the tapes are 'fair and accurate' *United States v. Roach*, 28 F.3d 729, 733 (8th Cir. 1994). Strict compliance with guidelines for admission of videotapes is not required where a videotape's 'substance and circumstances under which it was obtained were sufficient proof of its reliability.' *Id.* at 733 n. 4 (citing *United States v. Clark*, 986 F.2d 65, 68 (4th Cir. 1993)). ... Additionally, videotapes are admissible to show how a crime was committed and to link a defendant to a crime. *See e.g., United States v. Standish*, 3 F.3d 1207, 1210 (8th Cir. 1993)." *Suthterland*, 2011 WL 2784108, at *9.

G. **Statements of Non-Testifying Agents**

During trial, agents may testify about other agents' surveillance. Such testimony is admissible under the present-sense-impression exception of Rule 803(1) of the Federal Rules of

12

Evidence. *See, e.g., United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995) (testimony of agents who overheard observations of surveillance officers "easily satisfy the requirements" of Rule 803(1), as "[t]he surveillance officers were providing a description of the events at the same time they were witnessing them, so the testimony was admissible under the present sense impression exception."). This case-law survives *Crawford v. Washington,* 541 U.S. 36 (2004). *See Solorio,* 669 F.3d at 952-54.

### H. Witness Impeachment

Rule 608 of the Federal Rules of Evidence governs the impeachment of witnesses based on specific instances of their conduct. It permits inquiry into specific instances of a witness's conduct for the purpose of attacking the witness's credibility only on cross examination of the witness or of another witness who has testified as to the principal witness's character for truthfulness, and only if the prior instance of conduct is "probative of the character for truthfulness or untruthfulness." Fed. R. Evid. 608(b).

Rule 608 also prohibits proof of specific instances of a witness's conduct by extrinsic evidence. Fed. R. Evid. 608(b). Thus, even when Rule 608(b) allows inquiry into a specific instance of conduct probative of truthfulness, such as making false statements, it does not permit inquiry into the consequences of that act, such as an arrest or other disciplinary action for conduct. *See id.,* advisory committee note ("[T]he extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act," listing suspension or other disciplinary action as an example); *see also United States v. Davis*, 183 F.3d 231, 257 n.12 (3d Cir. 1999) (stating that Rule 608 prohibits inquiry into a witness's suspension from work based on a prior bad act).

Finally, inquiry into specific acts of a witness's conduct is subject to the Court's discretion, and the court may prohibit such inquiry under Rule 404. *See, e.g., United States v. Geston*, 299

13

F.3d 1130, 1137-38 (9th Cir. 2002).

### I. Unrelated Instances of Non-Criminal Conduct

Evidence that defendant obeys laws or otherwise comported himself or herself well on other occasions is inadmissible because it is not probative of whether s/he committed the crimes charged in this case. *See, e.g., United States v. Qaoud*, 777 F.2d 1105, 1112 (6th Cir. 1985) (affirming exclusion of evidence that defendants did not take bribes on certain occasions was inadmissible as irrelevant to whether they did take bribes on others); *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir. 1983) (affirming exclusion of evidence of specific, unrelated "good acts" as irrelevant to guilt); *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."). Evidence of a "lack of prior bad acts" amounts to inadmissible character evidence under Rule 405(a), which prohibits evidence of specific instances of conduct to prove character. *See United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987); *see also United States v. Hedgcorth*, 873 F.2d 1307, 1313 (9th Cir. 1989) (same).

### J. Explanation of Investigation

An out-of-court statement is not hearsay when offered not for the truth but to explain how an investigation unfolded. *See United States v. Tenerelli*, 614 F.3d 764, 772 (8th Cir. 2010); *United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004); *United States v. Barela*, 973 F.2d 852, 855 (10th Cir. 1992); *United States v. Martin*, 897 F.2d 1368, 1371-72 (6th Cir. 1990); *United States v. Love*, 767 F.2d 1052, 1063-64 (4th Cir. 1985).

### K. Inextricably Intertwined Evidence

"Inextricably intertwined" evidence is admissible under a well-settled exception to Rule 404(b)'s general ban on uncharged misconduct evidence. *See, e.g., United States v. Beckman*, 298 F.3d 788, 793-94 (9th Cir. 2002) ("Evidence of 'other acts' is not subject to Rule 404(b) analysis

14

if it is 'inextricably intertwined' with the charged offense. This exception applies when (1) 'particular acts of the defendant are part of… a single criminal transaction,' or when (2) 'other act' evidence… is necessary [to admit] in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.") (citations omitted); *United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996) ("In general, evidence of other crimes committed by the defendant [] is inadmissible. However, an exception to this general rule is that evidence of other criminal activity may be used for the purpose of providing the context in which the charged crime occurred.") (citation omitted).

## L. **Stipulations**

Where appropriate, the government may enter into stipulations regarding the facts. "When parties have entered into stipulations as to material facts, those facts will be deemed to have been conclusively established." *United States v. Houston*, 547 F.2d 104, 107 (9th Cir. 1976).

## VIII. CONCLUSION

This has been an outline of the case, a summary list of the witnesses who may testify, and a discussion of possible issues at trial. Since issues not covered here might come up at trial, the Government would respectfully seek leave to submit further briefs as necessary to assist the Court.

RESPECTFULLY SUBMITTED this 6th day of June, 2022.

SHAWN N ANDERSON
United States Attorney
Districts of Guam and the NMI

By: _____
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney

15